# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2539

_____

SL Montevideo Technology, Inc.,    *
                                  *

        Plaintiff - Appellant,       *
                                    *    Appeal from the United States
      v.                                 *    District Court for the
                                    *    District of Minnesota.
Eaton Aerospace, LLC,           *
                                    *

        Defendant - Appellee.       *

_____

Submitted: January 11, 2007
Filed: July 12, 2007

_____

Before LOKEN, Chief Judge, BYE and SHEPHERD, Circuit Judges.

_____

LOKEN, Chief Judge.

      Eaton Aerospace contracted to supply stabilizer trim motors for Boeing 737 airplanes. Stabilizer trim motors are powered by brushless direct current (DC) motors. Eaton subcontracted with SL Montevideo Technology, Inc. (SLM), to supply a customized brushless DC motor meeting Eaton's specifications for this application. After developing and supplying two versions of that motor for several years, SLM refused to bid on a redesigned model and then commenced this diversity action accusing Eaton of misappropriating SLM's trade secrets and breaching a Proprietary Information Agreement (PIA) by the manner in which Eaton obtained a redesigned motor from another supplier. After trial but before submitting the case to the jury, the

district court[1] granted Eaton judgment as a matter of law on both claims. Applying Minnesota law, the court concluded that SLM "has not presented any testimony or exhibits establishing with particularity what its claimed trade secrets are" and "has not presented sufficient evidence from which a reasonable jury could conclude that Eaton breached the PIA." SLM appeals only the dismissal of its breach of contract claim. We affirm.

# I.

After Eaton contracted to supply Boeing stabilizer trim motors for the 737 airplane, SLM with input from Eaton and Boeing designed and began supplying Eaton with a customized brushless DC motor for this application, referred to as the -01 motor. SLM was Eaton's sole source for this brushless DC motor. As SLM did not have an exclusive supply contract, Eaton explored developing a second source through another supplier, Astromec, Inc., or Eaton's own production facilities. But nothing came of these efforts.

In 1999, Boeing complained of -01 motor failures. In response, SLM, Eaton, and Boeing modified the -01 brushless DC motor design. The modified product, referred to as the -02 motor, had larger bearings than the -01 motor and incorporated other changes. In 2000 and 2001, SLM supplied -02 motors which Eaton then installed in its stabilizer trim motors. Boeing had no further complaints.

In January 2000, SLM proposed a Proprietary Information Agreement relating to the -01 and -02 brushless DC motors. Eaton responded that it was willing to enter into a PIA; however, because the parties had worked on this project for many years without such an agreement, Eaton proposed that SLM attach to the PIA "a list that

[1]The HONORABLE RICHARD H. KYLE, United States district judge for the District of Minnesota

outlines the documents that [Eaton] has in its possession that [SLM] believes are confidential." SLM proposed instead that the agreement be limited to documents stamped confidential by SLM. Eaton agreed, and the parties signed the PIA on January 27, 2000. The PIA required that each party "keep in confidence and not disclose to any person . . . the other Party's Proprietary Information." The PIA defined "Proprietary Information" as including:

> recorded information . . . of a scientific or technical nature . . . which has been marked as proprietary . . . by a stamp or other written or recorded identification by the originating party prior to disclosure or after disclosure if the Proprietary Information was inadvertently not marked prior to disclosure.

The PIA excluded from protection Proprietary Information "in the public domain," already known or independently developed by the receiving party, or made public to others by the party claiming proprietary rights.

In March 2001, Eaton notified SLM that it was redesigning its stabilizer trim motor for the Boeing 737 and that the changes would require modest redesign of the brushless DC motor component. Eaton invited SLM to redesign its -02 motor. SLM declined. Forced to find a new supplier, Eaton contracted with Astromec to develop and supply a brushless DC motor for the redesigned stabilizer trim motor.

Astromec's design process for this brushless DC motor was long and difficult. Deadlines were missed, and Boeing expressed concerns to Eaton that Astromec could not produce a quality motor. At one point, Eaton asked SLM to reconsider its refusal to redesign the -02 motor. Again, SLM declined. Astromec's struggle to design a motor "from scratch" threatened Eaton's contract commitments to Boeing. Not surprisingly, Eaton's engineers provided guidance and technical support and critiqued Astromec's design proposals. SLM claims that Eaton breached the PIA by disclosing

SLM's proprietary information to Astromec during this design and development process.

SLM commenced this action in May 2003, before Astromec was able to supply Eaton with production quantities of its brushless DC motor. SLM claims no lost profits or other direct damages, conceding that its -01 and -02 motors could only be used in Eaton stabilizer trim motors for the 737 airplane and that SLM was unwilling to continue this relationship by supplying Eaton with a redesigned brushless DC motor suitable for use in Eaton's new stabilizer trim motor. Thus, there is no element of unfair competition here. Rather, SLM's contract claim is for "unjust enrichment" measured by the monetary advantage to Eaton of allegedly using SLM's proprietary information to accelerate Astromec's development of an alternative brushless DC motor so that Eaton could meet its contract commitments to Boeing.

Abandoning its trade secret claim on appeal, SLM argues that the district court erred in granting judgment as a matter of law on the contract claim because "the entire design" of SLM's motor is Proprietary Information protected by the PIA. The breadth of this claim is significant. SLM witnesses conceded that SLM was contractually obligated to provide its engineering drawings to Eaton, along with the customized motors Eaton purchased, and that the initial design parameters were specified by Eaton. Yet SLM asserts the right to bar Eaton from using "the entire design" of a customized product which it designed to Eaton's specifications, with guidance from Eaton and Boeing, and which Eaton purchased outright from SLM. If upheld, this claim would preclude Eaton from obtaining this critical component from another source (including Eaton itself) after *SLM* ended their relationship. This type of restraint is normally found in exclusive supply contracts. Of course, the parties were free to enter into a PIA putting Eaton in this extraordinary straightjacket. See, e.g., Universal Gym Equip., Inc. v. ERWA Exercise Equip. Ltd., 827 F.2d 1542, 1550 (7th Cir. 1987). The question is whether SLM proved they did so.

SLM's vice president of quality assurance testified that the components of brushless DC motors are well known but "the real proprietary nature is how these things are all put together and how the tradeoffs are made during the design effort such that the [customer's] spec is met." SLM presented evidence that it shipped Eaton six copies of "Green Packages" containing comprehensive engineering specifications and drawings for the -02 motor, and that it was SLM's practice to stamp such documents proprietary. SLM also presented evidence that Eaton's initial specifications to SLM in 1996 called for design of a brushless DC motor meeting general performance parameters (such as rotor inertia, breakaway torque, and resistance), whereas the specifications Eaton provided Astromec for a redesigned motor in 2002 called for the precise performance parameters achieved by SLM's -02 motor and disclosed by SLM in the proprietary Green Packages. SLM's design engineer testified that "internally, my motor and [Astromec's] motor are the same. The guts of that motor is the same. . . . They have to be because [Eaton] specified my design parameters."[2] SLM argues this is sufficient evidence for a reasonable jury to conclude that Eaton breached the PIA. Like the district court, we disagree.

The PIA protected proprietary information (i) contained in SLM documents stamped proprietary and (ii) not falling within one of the PIA's exclusions. As to the first element, the voluminous trial record contains *not one* SLM document stamped "proprietary." SLM argues that it should survive judgment as a matter of law on this ground because SLM witnesses testified that Green Packages are always stamped proprietary and Eaton witnesses recalled seeing SLM documents marked proprietary,

---

[2]This witness admitted the Astromec motor was not identical to the SLM motor. Eaton fashioned the redesign of its stabilizer trim motor so as to require only modest redesign of the brushless DC motor component. Thus, it is not surprising that the redesigned motor eventually purchased from Astromec had many similarities to the SLM motor.

so a reasonable juror could infer that at least one of the Green Packages sent to three different Eaton addresses was so marked. That argument is sound, but the second element required proof that Eaton misappropriated proprietary information not falling within one of the PIA's four exclusions -- information in the public domain, information already known or independently developed by Eaton, and information disclosed to others by SLM. SLM elected *not to offer the Green Package into evidence.* Without that evidence, the jury could not find this element satisfied.[3]

In a trade secret case, "[s]imply to assert a trade secret resides in some combination of otherwise known data is not sufficient, as the combination itself must be delineated with some particularity in establishing its trade secret status." Jostens, Inc. v. Nat'l Computer Sys., 318 N.W.2d 691, 699 (Minn. 1982); see Electro-Craft Corp. v. Controlled Motion, Inc., 332 N.W.2d 890, 898 (Minn. 1983) (failure to specify trade secrets doomed brushless motor manufacturer's claim of misappropriation by a competitor). To be sure, agreements such as the PIA may protect broader categories of information than trade secrets. But the PIA's exclusions limited its protection to information having the same characteristics of secrecy and novelty as trade secrets. Compare Minn. Stat. § 325C.01, subd. 3, 5. A claim that a confidentiality agreement was breached by disclosure of a proprietary combination of data should require the same precision of proof as a comparable trade secret claim. This is especially true when the alleged breach was committed, not by a free-riding competitor, but by the very customer who defined the product's customized specifications and then purchased the product. Absent misuse of *protected* proprietary information, the PIA did not bar Eaton from using the SLM motors it purchased, from

_____

[3]Proof that Eaton disclosed *protected* proprietary information to Astromec was fraught with difficulty for SLM. For example, SLM's amended complaint alleged that Boeing employees were given extensive access to SLM's facilities and design drawings in November 1999, *before the PIA was signed.* As Boeing was not a party to the PIA, this disclosure would likely trigger two of the PIA's exclusions.

modifying those products, or from seeking a replacement vendor when SLM walked away from their on-going relationship.

We review the grant of judgment as a matter of law de novo to determine whether the losing party submitted sufficient evidence to support a jury verdict in its favor, giving that party the benefit of all inferences "which may be drawn from the evidence without resort to speculation." Sip-Top, Inc. v. Ekco Group, Inc., 86 F.3d 827, 830 (8th Cir. 1996) (quotation omitted); see Fed. R. Civ. P. 50(a)(1). After careful review of the trial record, we conclude that, lacking evidence that specific data contained within documents marked proprietary was both protected by the PIA and disclosed to Astromec, the district court properly granted judgment as a matter of law on the ground that SLM failed to present evidence from which a reasonable jury could find that Eaton breached the PIA.

The judgment of the district court is affirmed.

_____