NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-1590
_____

GIVAUDAN FRAGRANCES CORPORATION,
Appellant

v.

JAMES KRIVDA; MANE USA
_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court Civil No. 3-08-cv-04409)
District Judge: Honorable Peter G. Sheridan

Submitted Under Third Circuit LAR 34.1(a)
September 9, 2015

BEFORE: VANASKIE, NYGAARD, and RENDELL, *Circuit Judges*

(Filed: February 12, 2016)
_____

OPINION[*]
_____

NYGAARD, *Circuit Judge.*

*Introduction*

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant Givaudan Fragrances Corporation creates and produces flavor and fragrance compounds for foods and beverages, household goods, personal care products and—most relevant to this appeal— fine fragrances and perfumes. Givaudan sued a former employee, Appellee James Krivda, and his new employer, Appellee Mane USA, Inc., claiming Krivda stole more than six hundred fragrance formulas before leaving its employ. Litigation has been ongoing since September of 2008. After granting summary judgment to the Appellees on the vast majority of Givaudan's claims, the District Court permitted some of them to proceed to trial. A jury rejected all of Givaudan's claims and found in favor of Mane USA and Krivda. We will affirm both the District Court's award of summary judgment, and the jury's verdict.

*Background*

Inasmuch as our opinion lacks precedential authority, and because the lengthy factual and procedural background is well known to the parties, we summarize only those facts and events that are relevant to the issues raised and to our decision. Krivda left Givaudan's employment in 2008 and went to work for a competitor, Mane USA. Givaudan sued Mane USA and Krivda for a misappropriation of trade secrets, asserting that prior to leaving the company, Krivda removed hundreds of secret fragrance formulas from Givaudan databases.[1] Givaudan claimed the stolen formulas were worth millions of dollars and were the "life blood" of its business.[2] The lawsuit proceeded to discovery,

---

[1] App. at 151.

[2] App. at 152.

2

which the District Court characterized as contentious.[3]  The Appellees requested that Givaudan identify, with some specificity, the formulas it believed were misappropriated. Givaudan responded that its formulas were trade secrets and refused to turn over more detailed information.

Instead, Givaudan provided Mane USA and Krivda with a document it labeled a 'print list.'  This document identified the name of each formula Givaudan believed Krivda improperly accessed.  Givaudan's list also related an identification number, and the date Krivda printed it.  This list was 48 pages in length and contained 40 formulas per page, but did not reveal the specific ingredients for each fragrance formula.  Appellees made repeated requests for additional information about the allegedly stolen formulas, but Givaudan demurred.  Ultimately, Givaudan did provide detailed ingredient information and specific percentage amounts for 34 fragrance formulas, but continued to balk at disclosing formula specifics for the remaining recipes.  The District Court granted summary judgment to the Appellees on claims where Givaudan refused to provide further detailed information, but allowed claims on 34 formulas to proceed to trial.

A five-week jury trial ensued.  The jury unanimously ruled in favor of Mane USA and Krivda on all claims, finding that Givaudan failed to prove that Krivda violated his employment contract or that any of Givaudan's formulas were misappropriated.

---

[3]App. at 4.

Givaudan has timely appealed, challenging the District Court's summary judgment and assigning error to decisions of the District Court during trial. We will affirm.[4]

*The Summary Judgment Ruling*

We review the District Court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party, in this case, Givaudan.[5] At summary judgment, Mane USA and Krivda[6] argued that the lack of specific information

---

[4] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

[5] *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012).

[6] In discussing the District Court's summary judgment ruling, we refer to Mane USA and Krivda collectively. Givaudan maintains that we should not do so because Krivda did not join Mane USA's motion for summary judgment and, therefore, the District Court's subsequent order granting partial summary judgment does not apply to him. That certainly is true: Krivda did not join Mane USA's motion for summary judgment or file one of his own. But, he did file motions seeking to preclude evidence of the hundreds of formulas Givaudan provided no information on, and, more importantly, joined Mane USA's motion in limine which asked the District Court to limit evidence at trial to the 34 formulas on which summary judgment had been denied. App. at 3172, 3178, 6413. We have recognized that "[i]t has long been established that, under the right circumstances, district courts are entitled to enter summary judgment sua sponte." *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 222 (3d Cir. 2004). However, a district court may not enter such a judgment without "placing the adversarial party on notice that the court is considering a sua sponte summary judgment motion" and providing that party "an opportunity to present relevant evidence in opposition to that motion." *Chambers Dev. Co. v. Passaic County Util. Auth.*, 62 F.3d 582, 584 n. 5 (3d Cir. 1995); *see also Otis Elevator Co. v. George Washington Hotel Corp.*, 27 F.3d 903, 910 (3d Cir. 1994). Notice is satisfied if " 'the targeted party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward.' " *Gibson*, 355 F.3d at 223–24 (quoting *Leyva v. On the Beach, Inc.*, 171 F.3d 717, 720 (1st Cir. 1999)). The requirements of notice and opportunity also apply to instances where a motion in limine might have a dispositive effect. *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064 (3d Cir. 1990) (reversing district court grant of summary judgment on the basis of a motion in limine because of lack of evidence that the non-moving party had been put on notice). Both the requirement of notice and that of opportunity are met here. First, Givaudan

4

made it impossible for them to defend against claims that Krivda provided Mane USA

with any misappropriated formulas.  In other words, without knowing the specific

components of Givaudan's fragrance formulas, Mane USA and Krivda had no basis for

investigation and/or comparison.  For its part, Givaudan responded that it had provided

access to its formulas through the print list.  Givaudan further argued that it had also

allowed Mane USA and Krivda to access the allegedly stolen formulas during discovery,

but with some restrictions: first, the formulas would be displayed on a computer screen at

Givaudan's corporate offices; second, Givaudan's counsel would be present; and third,

no copying or taking notes would be permitted.

---

certainly knew that the District Court was contemplating extending the effects of its
partial summary judgment ruling to Krivda because it specifically stated as much.  We
note the following exchange during the extensive hearing on the motion in limine:
"Court: I think anything beyond the 34 formulas, as far as I can tell, and this is my view
at the time, is speculative.  So, I wasn't going to allow damages beyond what is
reasonable for the jury to consider."  App. at 6425.  Counsel for Givaudan then asked:
"Are you saying, Your Honor, that's with respect to Mr. Krivda as well?"  *Id*.  The Court
responded: "With regard to Mr. Krivda, and the misappropriation claim."  *Id*.  Second,
Givaudan had ample opportunity to oppose and, indeed, presented lengthy argument at
the hearing as to why it should be allowed to seek damages against Krivda for all the
formulas.  App. at 6426-6429. The District Court, in ruling to the contrary, also
acknowledged the abundant chances Givaudan had been given to oppose limiting
Krivda's liability to the 34 claims prior to the hearing: "but what I know from reading all
these briefs and motions and prior arguments, is that the only proof we have that there
was receipt by Mane is these 34 formulas."  App. at 6430.  On this point, the District
Court stated that Givaudan had "been disagreeing with it for six months now."  App. at
6431.  Givaudan had notice and an opportunity to oppose.  Therefore, whether viewed as
a sua sponte summary judgment, or as a motion in limine, there was no error in limiting
Krivda's liability to match that of Mane USA's, and, as a result, we will refer to the
Appellees collectively.

The District Court found that Givaudan sufficiently identified 34 formulas, but rejected the fragrance company's arguments on the remaining formulas. The District Court noted Givaudan's burden to put Mane USA and Krivda on "specific notice of trade secret protection, or else lose that protection," and found that the company failed to meet that burden.[7] Givaudan's print list, the District Court determined, failed to provide any details as to the ingredients or percentages of ingredients in each formula.[8] The District Court also took a dim view of Givaudan's efforts to restrict access to its alleged trade secrets. It found the restrictions prohibiting copying and note-taking particularly onerous.[9] Lastly, the District Court rejected Givaudan's argument that a jury could infer that Krivda misappropriated hundreds of other suspected formulas based on circumstantial evidence gleaned from the 34 formulas it did disclose. The District Court noted that Givaudan's failure to provide specific details made it impossible to disprove such an inference: "Givaudan could have disclosed the specification of each formula, and then appropriate discovery procedures could have precisely identified whether Mane had received any or all of the allegedly purloined formulas."[10]

*Issues on Appeal Related To Summary Judgment*

---

[7] App. at 4.

[8] App. at 4.

[9] App. at 5.

[10] App. at 10.

It is patently obvious that trade secrets must be identified with enough specificity to put a defendant on notice of what is actually alleged to have been stolen.[11]  Like the District Court, we believe Givaudan failed to provide enough specific information about many of the formulas it believed had been misappropriated.  Summary judgment on those claims was proper on this basis alone.  Out of hundreds of formulas alleged to have been stolen, Givaudan disclosed sufficient information on just 34.  Information the company did provide on the remaining formulas was too vague because the exact ingredients for each formula were not disclosed and the nonspecific formula names that did appear on the list (such as "Jasper," "Bombs Away," and "Savage Girl")[12] did not provide Mane USA and Krivda with any information from which they could compare formulas in Mane USA's database.

On appeal, Givaudan re-raises arguments it presented to the District Court on summary judgment.  For example, Givaudan argues that the District Court should not have granted summary judgment on the vast majority of its formulas because it could have proven their misappropriation at trial by relying on inferences derived from circumstantial evidence.  We disagree.  We initially note that the District Court did permit Givaudan to present circumstantial evidence to the jury on the 34 formula claims

---

[11] *See, e.g., IDX Sys. Corp., v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002); *MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 522 (9th Cir. 1993); *SL Montevideo Tech., Inc. v. Eaton Aero, LLC*, 491 F.3d 350, 354 (8th Cir. 2007*); Litton Sys., Inc. v. Sundstand Corp.*, 750 F.3d 952, 956 (Fed. Cir. 1984).

[12] App. at 8994.

7

that proceeded to trial.[13]  That circumstantial evidence included Mane USA's recruitment

of Krivda, Krivda's printing actions before leaving Givaudan, and formula name changes

and similarities.[14]  The jury, however, rejected this evidence and unanimously found

against Givaudan on the 34 formulas before it.  We agree with the Appellees that, given

this, a different decision on the unnamed formulas could not have been expected.

Givaudan points to our decision in *SI Handling Systems, Inc. v. Heisley*[15] to support its

position that it should have been permitted to use circumstantial evidence to establish the

misappropriation of the remaining trade secrets.  In *SI Handling*, we did note that,

> [i]n trade secret cases [m]isappropriation and misuse can
> rarely be proved by convincing direct evidence.  In most
> cases plaintiffs must construct a web of perhaps ambiguous
> circumstantial evidence from which the trier of fact may draw
> inferences which convince him that it is more probable than
> not that what plaintiffs allege happened did in fact take place.
> Against this often delicate construct of circumstantial
> evidence there frequently must be balanced defendants and
> defendants' witnesses who directly deny everything.[16]

But unlike here, the court and the parties in *SI Handling* were well aware of the

components of each trade secret at issue.[17]  In this case, no detailed information was

---

[13] App. at 6310.

[14] *See* Sup. App. at 636-30, 652-57, 717-19, 1521, 209-10, 215-17, App. at 12945.

[15] 753 F.2d 1244 (3d Cir. 1985).

[16] *Id*. at 1261.

[17] *See, e.g., id.* at 1256-1262 (referencing the nonstandard coefficient of friction used by SI in making calculations for system design; knowledge of long lead times in component supply; SI's knowledge of the key decisionmakers within General Motors; SI's

8

made available. Circumstantial evidence can be used to establish a misappropriation of trade secrets, but only after enough specific information has been given to the accused party so they can defend what it is they are accused of stealing. Inferences drawn from circumstantial evidence cannot be used to substantiate bald assertions.[18]

Givaudan next devotes two scant paragraphs of argument to their contention that the District Court erred by granting summary judgment prematurely. Various discovery disputes, Givaudan maintains, were unresolved and the District Court erred by granting summary judgment without resolving those disputes first. The District Court ruled that, regardless of any deadlines, the remaining discovery motions were immaterial to the legal issues before the court on summary judgment.[19] We agree. Discovery had closed by the time the District Court entered summary judgment and we can find no objection by Givaudan to the discovery deadlines on the record.

Lastly, Givaudan argues that the District Court's grant of summary judgment to Mane USA and Krivda was a de facto sanction for the company's failure to abide by various discovery requests and/or orders. We have reviewed the record and conclude that the District Court's decision was clearly based on the merits of the issues before it. Furthermore, there is no evidence of any intent by the District Court to use the motion for

---

identification of GM's need for "two-way accumulation," "tugger," and "buffer" systems; the two-way accumulation system developed by appellants for ROBOTRAC while they were still in SI's employ; SI's CARTRAC costing and pricing information, and Nonstandard formulae for systems design developed by an IHI engineer (the "Tokunago formula book")).

[18] *See, e.g., Imax Corp. v. Cinema Tech. Inc.*, 152 F.3d 1161, 1168 (9th Cir. 1998).

[19] App. at 12.

summary judgment as a means to sanction Givaudan.  We therefore reject Givaudan's argument.

For all these reasons, we find no error in the District Court's award of summary judgment to Mane USA and Kridva and we will affirm that ruling.  We now turn our attention to Givaudan's claim that, through various actions and rulings, it was deprived of a fair trial.

*Issues on Appeal Related To Trial*

Givaudan's purported trial errors involve the admission of evidence and the propriety of jury instructions.[20]  Upon review of the entire record, we see no abuse of discretion with regard to any of the numerous evidentiary issues Givaudan raises.[21]  We will highlight a few, beginning with the District Court's exclusion of the print list from

---

[20] We review a district court's decision to admit or exclude evidence for an abuse of discretion. *Glass v. Philadelphia Elec. Co*., 34 F.3d 188, 191 (3d Cir. 1994).  Our review of a trial court's jury instructions, however, is plenary. *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1212 (3d Cir. 1995).  When we assess jury instructions we must look at the totality of the charge given to the jury, not merely a particular paragraph or sentence. *See In re Braen*, 900 F.2d 621, 626 (3d Cir. 1990) (citing *United States v. Piccolo*, 835 F.2d 517, 520 (3d Cir. 1987)).  "We review jury instructions to determine whether, if taken as a whole, they properly apprised the jury of the issues and the applicable law." *Tigg Corp. v. Dow Corning, Corp*., 962 F.2d 1119, 1123 (3d Cir. 1992) (citing *Gutzan v. Altair Airlines, Inc*., 766 F.2d 135, 138 (3d Cir. 1985)).  "'The trial court should be reversed only if the instruction was capable of confusing and thereby misleading the jury.'" *United States v. Rockwell*, 781 F.2d 985, 991 (3d Cir. 1986) (quoting *United States v. Fischbach & Moore, Inc*., 750 F.2d 1183, 1195 (3d Cir. 1984).

[21] These issues include a challenge to the exclusion of a spreadsheet listing some 8000 formulas not at issue in the case; evidence concerning the pace at which Krivda entered formulas into Mane USA's database; and the exclusion of an email exchange between Krivda and Mane USA which Givaudan claimed was proof that Krivda was keeping Givaudan formulas at home.

evidence. The District Court was rightly concerned with the trustworthiness of this document. The record contains no explanation of how this list was created, and the purpose for its creation. Givaudan's vice president of technology testified that he did not prepare the print list and did not know what instructions were given to create this list.[22] Further, it was not an abuse of discretion for the District Court to prohibit Givaudan from introducing evidence that formulas beyond those under consideration at trial were transferred to Mane USA's data storage facilities in other countries. This evidence was properly excluded because it lacked the necessary foundation to connect it with the 34 claims that were actually on trial.

Givaudan also maintains that the District Court abused its discretion by permitting Appellee Krivda to testify as a surprise expert witness. There was no abuse of discretion, however, because Krivda's testimony was not disinterested expert testimony, but rather fact testimony that was based on his own personal knowledge of the events at issue.[23] And, Krivda's testimony could hardly be surprising to Givaudan, given Krivda's 2010 pre-trial declaration and the Joint Final Pretrial order that indicated what Krivda's testimony would encompass.

Givaudan takes further issue with several instructions the District Court gave to the jury. Again, having reviewed the record, we see no error with any of the instructions

---

[22] App. at 5974-75, 6722-23.

[23] *See Gomez v. Rivera Rodriguez*, 344 F.3d 103, 114-15 (1st Cir. 2003) ("[A] party need not identify a witness as an expert so long as the witness played a personal role in the unfolding of the events at issue and the anticipated questioning seeks only to elicit the witness's knowledge of those events.").

utilized by the District Court. For example, Givaudan maintains that the District Court should not have instructed the jury that it would only be considering whether Krivda "placed 34 . . . formulas into Mane's formula database."[24] Instead, Givaudan argues that such an instruction implied to the jury that its claims on the other formulas were baseless. Inasmuch as we saw no error in the District Court's decision on summary judgment, we see no error in its instructions limiting the jury's consideration to the 34 claims that were actually on trial.

Givaudan additionally charges that the District Court erred by instructing the jury that an "exact match" was necessary for a formula to be misappropriated. Such an instruction, however, was never given. Instead, the District Court instructed the jury that liability for misappropriation exists where a party uses information that was "substantially derived" from a trade secret.[25] Not only is this a correct statement of New Jersey law,[26] we cannot find an objection to this instruction from Givaudan on the record.

Lastly, Givaudan contends that the District Court erred by not charging the jury on its theories of unfair competition, conversion, replevin, aiding and abetting, and tortious interference claims. Again, we see no error. The elements of these other claims were subsumed into the instructions the District Court issued for breach of contract,

---

[24] App. at 12395.

[25] App. at 13153.

[26] *See Rycoline Prods.*, 756 A.2d 1047, 1053 (N.J. Super. 2000).

12

misappropriation, and conspiracy.[27]  Given that the jury found in favor of Mane USA and

Krivda on those claims, it could not have found in favor of Givaudan on the omitted

counts due to the overlapping of elements.  In sum, and having reviewed the entire

record, we find no error in any of the jury instructions issued by the District Court.

*Conclusion*

The District Court's decision to grant Mane USA and Krivda summary judgment

on the vast majority of Givaudan's claims will be affirmed.  We further find no error

which deprived Givaudan of a fair trial.  As such, we see no basis on which to overturn

the jury's verdict.

---

[27] App. at 6728-29.