**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ELI ATTIA; ELI ATTIA ARCHITECT PC, <br><br> *Plaintiffs-Appellants*, <br><br> v. <br><br> GOOGLE LLC; FLUX FACTORY, INC.; LARRY PAGE; SERGEY BRIN; SEBASTIAN THRUN; ERIC TELLER, AKA Astro Teller; MICHELLE KAUFMANN; JENNIFER CARLILE; AUGUSTO ROMAN; NICHOLAS CHIM, <br> *Defendants-Appellees.* | No. 19-15771 <br><br> D.C. No. 5:17-cv-06037-BLF <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted September 16, 2020
San Francisco, California

Filed December 16, 2020

Before: J. Clifford Wallace, A. Wallace Tashima, and
Bridget S. Bade, Circuit Judges.

Opinion by Judge Wallace

## SUMMARY[*]

### Trade Secrets

The panel affirmed the district court's dismissal of claims brought under the Defend Trade Secrets Act of 2016 and the Racketeer Influenced and Corrupt Organizations Act against Google, LLC, and other defendants by an architect and his firm.

The architect first sued Google in 2014 for state law trade secret and contract claims. After Congress enacted the DTSA in 2016, he added RICO and DTSA claims. The panel concluded that the DTSA claim was precluded by Google's pre-enactment disclosures in the publication in 2012 of patent applications containing plaintiff's trade secrets. The panel held that the misappropriation of a trade secret prior to the enactment of the DTSA does not preclude a claim arising from post-enactment misappropriation or continued use of the same trade secret. Nonetheless, plaintiff lacked standing to assert a DTSA claim because Google's 2012 patent applications placed the information in the public domain and necessarily extinguished its trade secret status. The panel rejected plaintiff's argument that Google was equitably estopped from pointing to the 2012 publication of its patent applications to defend against plaintiff's DTSA claim.

Affirming the district court's dismissal of plaintiff's RICO and RICO conspiracy claims, the panel held that

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

plaintiff failed to establish a pattern of racketeering because he did not identify two sufficiently related predicate acts.

## COUNSEL

John E. Floyd and Jeffrey W. Chen, Bondurant Mixson & Elmore LLP, Atlanta, Georgia; Professor G. Robert Blakey Emeritus, Notre Dame Law School, Paradise Valley, Arizona; James W. Christian, Christian Smith & Jewell, Houston, Texas; Eric W. Buether, Beuther Joe & Carpenter LLC, Dallas, Texas; Jamie L. Dupree, Futterman Dupree Dodd Croley, San Francisco, California; for Plaintiffs-Appellants.

Charles Tait Graves (argued), Shelby Pasarell Tsai, and Joshua A. Baskin, Wilson Sonsini Goodrich & Rosati P.C., San Francisco, California; David H. Kramer, Wilson Sonsini Goodrich & Rosati P.C., Palo Alto, California; for Defendants-Appellees Google LLC, Larry Page, Sergey Brin, Sebastian Thrun, and Eric Teller.

Robert Kent (argued) and Karen I. Boyd, Turner Boyd LLP, Redwood City, California, for Defendants-Appellees Flux Factory, Inc.; Michelle Kaufmann; Jennifer Carlile; Augusto Roman; and Nicholas Chim.

**OPINION**

WALLACE, Circuit Judge:

In addition to state law claims, Plaintiffs Eli Attia and his firm Eli Attia Architect PC (collectively, Attia) asserted federal claims pursuant to the Defend Trade Secrets Act of 2016 (DTSA) and the Racketeer Influenced and Corrupt Organizations Act (RICO) against Defendants Google, LLC, Larry Page, Sergey Brin, Sebastian Thrun, Eric "Astro" Teller, Michelle Kaufmann, Jennifer Carlile, Augusto Roman, Nicholas Chim, and Flux Factory, Inc. (collectively, Google). Attia appeals from the district court's judgment dismissing Attia's Fifth Amended Complaint's DTSA and RICO claims and declining to exercise supplemental jurisdiction over Attia's state law claims. Attia argues that Google's disclosure of certain trade secrets in 2012, prior to the enactment of the DTSA on May 11, 2016, does not preclude Attia's DTSA claim arising from Google's alleged post-enactment misappropriation or continued use of trade secrets. In the alternative, Attia argues that Google is equitably estopped from invoking its 2012 disclosure to defend against Attia's DTSA claim. Additionally, Attia contends that Attia has sufficiently alleged a pattern of racketeering activity to support Attia's RICO claims. We have jurisdiction pursuant to 8 U.S.C. § 1291. Reviewing "de novo the district court's dismissal of a complaint for failure to state a claim" and "de novo a dismissal without leave to amend," *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 772 (9th Cir. 2002), we affirm.

I.

Eli Attia is an architect who developed a new architecture technology called "Engineered Architecture"

(EA).  In July 2010, Google sought to enter into a partnership with Attia to develop EA.  By September 2010, Google began working with Attia to develop a program called "Project Genie" to implement EA.  In January 2011, Google and Attia entered into an Inbound Services Agreement (ISA) and a Statement of Work Agreement (SOW).  Attia disclosed his EA trade secrets to Google with the understanding that he would be compensated if the program were successful.

After Attia executed patent assignments, in 2011 Google filed patent applications with the U.S Patent and Trademark Office relating to the EA trade secrets and showed a prototype of the EA technology to investors.  The patents were published in July and November 2012.  Google then allegedly excluded Attia from the project and used Attia's EA technology to create a new venture, which eventually became Flux Factory.

Attia sued Google in December 2014 for state law trade secret and contract claims.  In 2016, Congress enacted the DTSA, which allows plaintiffs to assert a federal claim for the misappropriation of trade secrets occurring on or after May 11, 2016.  Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, § 2(e), 130 Stat. 376, 381–82 (2016).  With the enactment of the DTSA, criminal misappropriation of a trade secret became a predicate act under RICO on May 11, 2016. *See id.* § 3(b), 130 Stat. at 382 ("Section 1961(1) of title 18, United States Code, is amended by inserting 'sections 1831 and 1832 (relating to economic espionage and theft of trade secrets),' before 'section 1951.'").  In July 2017, Attia amended his pleading to add RICO claims based on Google's alleged trade secret misappropriation.  Google removed the action to federal district court and moved to dismiss.  The district court granted the motion to dismiss the Fourth Amended Complaint with leave to amend.

In the Fifth Amended Complaint, Attia asserted a new DTSA claim. Attia also asserted two RICO claims: one pursuant to 18 U.S.C. § 1962(c), for operation of an enterprise through racketeering against Google, Inc. and Flux Factory, Inc.; and the other pursuant to 18 U.S.C. § 1962(d) for conspiracy to violate sections 1962(a) and 1962(c) against all the defendants. With respect to the DTSA and RICO claims, the Fifth Amended Complaint emphasized that Google's alleged misappropriation of the trade secrets and RICO predicate acts occurred after the DTSA's enactment. Attia cited two separate actions as evidence of Google's pattern of racketeering: the copyright infringement case, *Oracle Am., Inc. v. Google LLC*, 886 F.3d 1179, 1187 (Fed. Cir. 2018); and a trade secret misappropriation case involving VSL Communications, LTD (VSL).

The district court dismissed Attia's federal claims with prejudice and declined to exercise supplemental jurisdiction over the state law claims. In dismissing the Fifth Amended Complaint, the district court found that Attia's alleged trade secrets were completely parallel to what Google disclosed in 2012 in the published patent applications. The district court reasoned that the 2012 publication of Google's patent applications extinguished the relevant trade secrets, and it cited Attia's acknowledgment of this extinguishment in the Fifth Amended Complaint. The district court held that Attia lacks standing to assert DTSA or RICO claims, and stated that neither a theory of estoppel nor continued use could convert the 2012 publication of Google's patent applications into a DTSA violation or a RICO predicate act. The district court also rejected Attia's alternative argument that Google is equitably estopped from pointing to the 2012 patent publications and reasoned that "it would be *in*equitable to

allow RICO or the DTSA to apply retroactively contrary to [c]ongressional intent."

## II.

We first consider whether Google's pre-enactment disclosures preclude Attia's DTSA claim. On this point, there are two related issues. We must determine whether, as a matter of law, the pre-enactment disclosure of a trade secret forecloses the possibility of a DTSA claim arising from the continued use of the trade secret after enactment. While several district courts in this circuit have considered the issue, *see, e.g.*, *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133 (N.D. Cal. 2019); *Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*, No. 16-CV-03737-JCS, 2017 WL 412524 (N.D. Cal. Jan. 31, 2017), it is one of first impression for this court. We then will consider whether, even if the statute provides for a continued use theory of liability, the publication in 2012 of Google's patent applications containing Attia's EA trade secrets nevertheless prevents Attia from asserting the DTSA claim.

## A.

Congress enacted the DTSA on May 11, 2016. Defend Trade Secrets Act of 2016 § 2 (codified as amended at 18 U.S.C. § 1831 et seq.). The statute creates a private right of action for "any misappropriation of a trade secret . . . for which any act occurs on or after the date of the enactment of [the] Act." *Id.* at 381–82. The DTSA defines a "trade secret" as information that "the owner thereof has taken reasonable measures to keep . . . secret" and that "derives independent economic value, actual or potential, from not being generally known to . . . another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). The statute provides the

following three definitions of "misappropriation": (1) the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;" (2) the disclosure of a trade secret without the owner's consent; and (3) the use of a trade secret without the owner's consent. *Id.* §§ 1839(5)(A), (5)(B).

With respect to misappropriations occurring both before and after the statute's enactment, the language of the DTSA is distinct from other trade secret statutes. For example, the Uniform Trade Secrets Act (UTSA) is a model statute that sets out a private claim for the misappropriation of trade secrets. Many states have adopted the UTSA to draft their own trade secrets statutes. *United States v. Chung*, 659 F.3d 815, 825 & n.7 (9th Cir. 2011). The UTSA contains an anti-continued use provision, stating that "[w]ith respect to a continuing misappropriation that began prior to the effective date," it "does not apply to the continuing misappropriation that occurs after the effective date." Unif. Trade Secrets Act § 11 (Unif. Law Comm'n 1985). Unlike the UTSA, the DTSA does not contain an anti-continued use provision. This omission suggests that the DTSA is not limited to misappropriation that only began after enactment of the DTSA. At least one district court in this circuit has highlighted the DTSA's omission of such a provision to determine that the statute applies to the continued use of a trade secret where the misappropriation began prior to enactment so long as acts of misappropriation continue to occur post-enactment. *See Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2017 WL 1436044, at *4–5 (N.D. Cal. Apr. 24, 2017). While the DTSA states that "a continuing misappropriation constitutes a single claim of misappropriation," it does so only in the context of the limitations period for claims pursuant to the

DTSA. 18 U.S.C. § 1836(d). The parties do not dispute whether Attia's DTSA claim is time-barred, and the period of limitations provision is not relevant to whether the DTSA allows for claims of continued use.

"As in any case of statutory construction, our analysis begins with the language of the statute. To aid our inquiry, we rely on our established rules of statutory construction." *United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013) (citation omitted). "We also look to similar provisions within the statute as a whole and the language of related or similar statutes to aid in interpretation." *Id.* Here, the legislative history of the DTSA shows that Congress was expressly aware of the UTSA and its structure. Congress acknowledged that "[w]hile 48 states have adopted variations of the UTSA, the state laws vary in a number of ways and contain built-in limitations that make them not wholly effective in a national and global economy." H.R. Rep. No. 114-529, at 198 (2016), *reprinted in* 2016 U.S.C.C.A.N. 195, 198. In contrast, Congress stated that the DTSA would serve as a "needed update to Federal law" and "provide a single, national standard for trade secret misappropriation with clear rules and predictability for everyone involved." *Id.* at 200. Congress was aware of the role and limitations of the UTSA as model legislation for the states, and it recognized the DTSA and the UTSA as similar. This is critical for purposes of our statutory interpretation analysis. Congress's omission in the DTSA of an anti-continued use provision is, therefore, significant. If Congress had intended to preclude claims arising from post-enactment continued use that began prior to enactment, it could have done so by incorporating the language in section 11 of the UTSA into the DTSA. That it did not include such a provision in the DTSA evinces congressional intent for the statute to apply also to post-enactment misappropriation that

began prior to enactment. Accordingly, we hold that the misappropriation of a trade secret prior to the enactment of the DTSA does not preclude a claim arising from post-enactment misappropriation or continued use of the same trade secret.

B.

We now turn to the second key issue of whether the nature of Google's 2012 disclosures prevents Attia from asserting a DTSA claim. In 2011, with Attia's permission and knowledge that the patents would be available to the public upon publication, Google filed patent applications relating to EA. The patent applications were published in 2012. Attia also alleges that Google separately disclosed trade secrets relating to EA to investors in 2012.

We hold that Attia lacks standing to assert a claim pursuant to the DTSA because Google's 2012 patent applications relating to EA extinguished the information's trade secret status. When we evaluate whether disclosure of information destroyed its trade secret status—i.e., its "independent economic value" from being kept secret, 18 U.S.C. § 1839(3), we "most often consider the degree to which the secret information confers a competitive advantage on its owner," *Chung*, 659 F.3d at 826. "[T]he analysis is fact-intensive and will vary from case to case." *Id.* However, it appears to us to be well-settled that publication of information in a patent application eliminates any trade secrecy. *See Ultimax Cement Mfg. Co. v. CTS Cement Mfg. Co.*, 587 F.3d 1339, 1355–56 (Fed. Cir. 2009) (holding that the district court properly granted summary judgment disposing of plaintiffs' trade secret claims under California law because plaintiffs could not prove the existence of a trade secret where its trade secret had been "disclosed in a patent," making it "generally known to the

public"); *see also Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1359 (C.D. Cal. 1995), *citing Rototron Corp. v. Lake Shore Burial Vault Co.*, 712 F.2d 1214, 1215 (7th Cir. 1983) ("It is well established that the disclosure of a trade secret in a patent places the information comprising the secret into the public domain. Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished. . . ."), *aff'd*, 113 F.3d 1258 (Fed. Cir. 1997). Attia admits that publication of the EA information in Google's patents extinguished Attia's trade secrets.

District courts in this circuit have similarly determined that, within the context of the DTSA, "a plaintiff has a viable trade secret claim that would protect his proprietary unpatented technology only if he reveals implementation details and techniques *beyond* what was disclosed in his patent." *AlterG*, 388 F. Supp. 3d at 1146, *quoting Aqua-Lung Am., Inc. v. Am. Underwater Prod., Inc.*, 709 F. Supp. 2d 773, 788 (N.D. Cal. 2010). Attia has not done so here and admits that its alleged trade secrets were completely parallel to what was disclosed in Google's published patent applications.

Thus, disclosure of a trade secret in a patent application extinguishes the information's trade secret status. This is consistent with our holding regarding the continued use theory of liability pursuant to the DTSA because the plain text of the DTSA requires the existence of a trade secret to establish a claim. 18 U.S.C. § 1836(b)(1). Therefore, disclosure of a trade secret prior to the DTSA's enactment does not preclude a misappropriation claim arising after enactment, to the extent that the pre-enactment disclosure was not a patent publication. Accordingly, while a fact-intensive analysis might be warranted to determine if

Google's 2012 disclosure to investors destroyed trade secrecy, the 2012 publication of Google's patent applications placed the information in the public domain and necessarily extinguished its trade secret status. Attia lacks standing to assert a DTSA claim relating to the patented information. The district court properly dismissed Attia's DTSA claim.

## C.

In the alternative, Attia argues that Google is equitably estopped from pointing to the 2012 publication of its patent applications to defend against Attia's DTSA claim. Attia cites out-of-circuit cases for the proposition that "a wrongdoer who has made an unlawful disclosure of another's trade secrets cannot assert that publication to escape the protection of trade secret law." *Syntex Ophthalmics, Inc. v. Tsuetaki*, 701 F.2d 677, 683 (7th Cir. 1983). However, in *Syntex*, the court recognized that "the holder of the trade secret did not make an election to obtain a patent." *Id.* Here, the Fifth Amended Complaint states that "Mr. Attia did not believe that this conduct by Google [Google's 2012 filing of patent applications] was wrongful, because he conditionally authorized Google to use his trade secrets and other proprietary information to develop Project Genie, but on the condition that Google compensate him for such use as provided in the SOW."

*Syntex* is neither binding on this court nor applicable given Attia and Google's agreement. Attia cites no authority to suggest that, in the context of the DTSA, a party is estopped from pointing to its pre-enactment disclosure in a patent application to defend against a misappropriation claim arising from post-enactment continued use. Moreover, even if Google were estopped from doing so, it is

not clear that we could ignore the trade secrets' nonexistence after the DTSA's enactment or any time after 2012.

### III.

Lastly, we address Attia's RICO and RICO conspiracy claims. In order to assert a RICO claim pursuant to 18 U.S.C. § 1962(c), a plaintiff must allege a pattern of racketeering activity by showing "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "A pattern is defined as 'at least two acts of racketeering activity' within ten years of each other." *Howard v. Am. Online, Inc.*, 208 F.3d 741, 749 (9th Cir. 2000), *quoting* 18 U.S.C. § 1961(5).

Attia argues that "the Google Defendants' modus operandi [or] repeated method of commission is to induce inventors to reveal their proprietary information through NDAs [non-disclosure agreements] then wrongfully use or publish the proprietary information to the exclusion of the inventors." Attia cites two separate actions as evidence of this pattern of racketeering: (1) *Oracle Am., Inc.*, 886 F.3d at 1187; and (2) a case involving VSL. We agree with the district court's reasoning that neither case is sufficiently related to this one. As the district court explained, Attia's allegations with respect to *Oracle* do not present a similar modus operandi and only describe failed license negotiations, without mention of an NDA. The district court also determined that, with respect to the second case, "the allegations relating to VSL are similar to those here," but the alleged conduct is not sufficiently related because it does not "embrace criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing

characteristics and are not isolated events." Attia fails to establish a pattern of racketeering because he has not identified two sufficiently related predicate acts.

We also agree with the district court that, "even if Plaintiffs' allegations were sufficient to establish a pattern of racketeering against Google LLC, they do not allege that either of these [actions] involved any of the Defendants except Google LLC—such that no pattern is established as to the individual Defendants or Flux Factory." The district court properly dismissed Attia's RICO and RICO conspiracy claims.

**AFFIRMED**.