NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MASIMO CORPORATION, CERCACOR LABORATORIES, INC.,**
*Plaintiffs-Appellees*

**v.**

**TRUE WEARABLES, INC., MARCELO LAMEGO,**
*Defendants-Appellants*

---

2021-2146

---

Appeal from the United States District Court for the Central District of California in No. 8:18-cv-02001-JVS-JDE, Judge James V. Selna.

---

Decided: January 24, 2022

---

JOSEPH R. RE, Knobbe, Martens, Olson & Bear, LLP, Irvine, CA, argued for plaintiffs-appellees. Also represented by BRIAN CHRISTOPHER CLAASSEN, STEPHEN C. JENSEN, IRFAN A. LATEEF, PERRY D. OLDHAM; MARK D. KACHNER, Los Angeles, CA; WILLIAM R. ZIMMERMAN, Washington, DC.

RACHEL ZIMMERMAN SCOBIE, Merchant & Gould P.C., Minneapolis, MN, argued for defendants-appellants. Also

represented by MICHAEL A. ERBELE, PAIGE STRADLEY; RYAN JAMES FLETCHER, Denver, CO; PETER GERGELY, New York, NY.

————————————————

Before MOORE, *Chief Judge*, BRYSON and DYK, *Circuit Judges*.

BRYSON, *Circuit Judge*.

Appellees Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Masimo") filed suit against appellants True Wearables, Inc., ("TW") and Dr. Marcelo Lamego alleging breach of contract, misappropriation of trade secrets under California and federal law, breach of fiduciary duty, and patent infringement. Masimo filed a motion for a preliminary injunction on its trade secret claims, and the district court granted the motion. We affirm.

I

The alleged trade secret in this case, known as the "TSS," relates to an algorithm used to solve optimization problems. Masimo uses this algorithm in devices that make determinations of various physiological values, including the concentration of total hemoglobin, a measurement known as "SpHb." J.A. 110–111. To estimate a patient's SpHb level, a device emits different wavelengths of light from LEDs into the patient's fingertip and then measures how much light has been absorbed when the light emerges from the other side of the fingertip. J.A. 404. The measurements are then inserted into an equation having the form of "$SpHb = Ax + By + Cz \ldots$," where x, y, and z are absorption measurements and A, B, and C are coefficients. Appellant's Br. 9. The coefficients are determined by optimizing the SpHb equation to fit the results of blood tests conducted during a clinical trial. *Id.* Because the SpHb equation may include up to 257 coefficients, the optimization cannot reasonably be done by hand, and thus a

computer algorithm is needed to determine the appropriate coefficients. J.A. 408–410. The TSS is Masimo's implementation of such an algorithm.

Dr. Lamego is a former Cercacor employee who developed the TSS while working at Cercacor. As part of his work, Dr. Lamego developed an internal presentation that disclosed two different variations of the TSS. J.A. 413–425; Appellant's Br. 11. After leaving Cercacor, Dr. Lamego worked briefly for another employer before founding TW. J.A. 122. At TW, he developed the "Oxxiom device," a pulse oximeter. J.A. 1378. TW attempted to protect some aspects of that device by filing patent applications.

On January 11, 2021, the U.S. Patent and Trademark Office ("PTO") issued a Notice of Allowance for one of TW's patent applications, U.S. Patent Application No. 16/198,335 ("the '335 Application"). J.A. 1063. The '335 Application claimed priority to an earlier provisional application, U.S. Provisional Patent Application No. 62/591,158 ("the '158 Application"). J.A. 1018. According to Masimo, the '158 Application contains one of the variations of the TSS that Dr. Lamego developed while at Cercacor. Upon learning that the PTO had issued a Notice of Allowance for the '335 Application, Masimo moved for a preliminary injunction on its trade secret claims to prevent the '158 Application from becoming public, which would occur if the '335 Application were allowed to issue as a patent.

The district court evaluated Masimo's motion using the so-called *Winter* factors for determining whether to issue a preliminary injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Under the *Winter* factors, a plaintiff must show that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm, (3) the balance of equities favors the plaintiff, and (4) the injunction is in the public interest. *Id.* In the Ninth Circuit, a court may enter a preliminary injunction "if the moving party demonstrates either a combination of probable

success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Johnson v. California State Bd. of Acct.*, 72 F.3d 1427, 1430 (9th Cir. 1995) (internal quotations, citation, and emphasis omitted).

Regarding the *Winter* factors, the district court first found that Masimo was likely to succeed on the merits of its trade secret claim because the TSS was not generally known and Masimo was likely to show that Dr. Lamego misappropriated the TSS. J.A. 10–16. The court next found that the risk of irreparable harm and the balance of the equities weighed in favor of a preliminary injunction. J.A. 16–17. Finally, the court found that issuance of a preliminary injunction was in the public interest. J.A. 18. After finding that each of the *Winter* factors favored a preliminary injunction, the district court granted Masimo's motion. TW then filed a motion for reconsideration, which the district court denied. This appeal followed.

II

On appeal, TW raises three principal arguments. First, it argues that the district court erred in determining that Masimo was likely to establish that the TSS was a trade secret. More specifically, TW argues that the district court erred in finding that Masimo was likely to show that the TSS derives economic value from not being publicly known, and in denying TW's motion for reconsideration, which was addressed to that issue. Second, TW argues that the district court erred in determining that Masimo was likely to establish that Dr. Lamego misappropriated Masimo's trade secret. Third, TW argues that the district court erred in its balancing of the equities.

A

In contending that Masimo is unlikely to succeed in establishing that the TSS is a trade secret, TW argues that it presented evidence that the TSS was generally known, and

that the district court failed to properly consider that evidence. The existence of a trade secret, including whether the information at issue is generally known, is a question of fact that we review for clear error. *Olaplex, Inc. v. L'Oréal USA, Inc.*, 855 F. App'x. 701, 706 (Fed. Cir. 2021); *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 730 (9th Cir. 1999).

The district court's analysis focused primarily on the definition of a trade secret under the California Uniform Trade Secrets Act ("CUTSA"). *See* J.A. 12–14. Under the CUTSA, information is eligible for trade secret protection if it (1) "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use," and (2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d).

TW argues that Masimo did not meet its burden to establish that the TSS is not "generally known" to "persons who can obtain economic value from its disclosure or use." *See id.* In TW's view, the only evidence Masimo presented that the TSS is not generally known is the testimony of a single Masimo employee, Jesse Chen, who stated that he was "not aware of any publications that include the derivations found in the [TSS] or describe an implementation of the [TSS]." J.A. 411; Appellant's Br. 41. That characterization ignores several pieces of evidence presented by Masimo that are relevant to whether the TSS is generally known.

First, Masimo pointed to evidence that Dr. Lamego protected the TSS as a trade secret while working at Cercacor. J.A. 807–820, including an email from Dr. Lamego to another employee describing TSS as "not known in the literature and . . . a trade secret," J.A. 809. Additionally, after founding TW, Dr. Lamego labeled a notebook including TSS and related material as containing trade secrets. J.A.

823–828. Moreover, and of particular note, Dr. Lamego argued to the PTO that the TSS was not "common knowledge." J.A. 1095–1096. Under the CUTSA, evidence of how the owner of an alleged trade secret and the alleged misappropriator treat that information is relevant to whether the information is generally known. *See Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, 63 (Ct. App. 2014) (considering evidence such as plaintiff's "documents extolling the novelty" of the information along with defendant's attempts to patent the information).

Despite Masimo's showing, TW argues that its evidence compels a finding that the TSS was generally known to those who can obtain economic value from its disclosure. Specifically, TW points to an IEEE conference paper that disclosed an algorithm equivalent to the TSS and that has been cited over 1,200 times. J.A. 3118. In addition to its arguments based on the IEEE conference paper, TW points to testimony from its expert, Thomas Goldstein, stating that variants of the TSS have appeared in statistics textbooks since the early 1960s. J.A. 3107–3108. In his declaration, Dr. Goldstein noted that an algorithm equivalent to the TSS was "widely known and widely used by the statistics community prior to [the TSS's] alleged appearance in the '158 Application." J.A. 3103.

The district court was not persuaded by the evidence relating to the IEEE publication. The court noted that while the publication in question was "not obscure," the existence of the publication did "not mean that the particular techniques described in them were 'generally known' to people who could obtain economic value from developing noninvasive blood content detectors." J.A. 12. "At best,"

the court added, "the articles could be a basis for determining that the TSS was 'readily ascertainable.'"[1]  *Id.*

TW argues that the district court's statement "improperly deemed evidence of publication of the alleged trade secret irrelevant as a matter of law to whether it is 'generally known' under the CUTSA."  Appellant's Br. 36.  In our view, that mischaracterizes the district court's opinion.  The district court simply found that the evidence regarding the IEEE publication did not conclusively show that the TSS was generally known among those who could obtain economic value from its disclosure.  The court acknowledged that the evidence regarding the publication could be relevant to whether the TSS was readily ascertainable.  The court then explained that TW could not avail itself of a defense based on ready ascertainability because it failed to show that Dr. Lamego obtained his knowledge of the TSS based on the IEEE publication and independently of his prior knowledge of Masimo's trade secret.  We see no legal error in that aspect of the district court's analysis.

Citing several cases, TW argues that "display in a single publication of an alleged trade secret in its entirety is

---

[1]   Under the CUTSA, the Ninth Circuit has explained, ready ascertainability is a defense to a claim of misappropriation of trade secrets, but the defense is available only if the defendant can establish that the alleged trade secret was obtained from sources that made the information ascertainable.  *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1168 n.10 (9th Cir. 1998).  Based on a California pattern jury instruction, TW argues that the Ninth Circuit has misstated the rule in California.  *See* Judicial Council of Cal. Civ. Jury Instructions No. 4420 (2021).  In the absence of a controlling California court decision to the contrary, it was appropriate for the district court to follow the Ninth Circuit's interpretation of the California statute.

conclusive evidence that it is generally known." Appellant's Br. 38. We disagree with that proposition, and we find that TW's cases are distinguishable. In *Ultimax Cement Manufacturing Corp. v. CTS Cement Manufacturing Corp.*, we held that information "disclosed in a patent" is "generally known to the public" for purposes of the CUTSA. 587 F.3d 1339, 1355–56 (Fed. Cir. 2009). We emphasized that the "relevant public in the cement industry" would be likely to know that the alleged trade secret, the use of certain compounds in cement, was disclosed in a Japanese patent. *Id.*

Similarly, in *Convolve, Inc. v. Compaq Computer Corp.*, the court held that information disclosed in two academic theses was generally known and therefore not a trade secret under the CUTSA. No. 00 CIV. 5141, 2011 WL 7144803, at *10–11 (S.D.N.Y. Oct. 6, 2011), *aff'd in relevant part*, 527 F. App'x 910, 922 (Fed. Cir. 2013). In that case, the plaintiff developed technology for use in computer disk drives, and the theses disclosing the alleged trade secret were directed specifically to disk drive technology. *See id.* at *1, *10. In both *Ultimax* and *Convolve*, there was a showing that the alleged secret was disclosed to others in the plaintiff's field. Here, the evidence shows that TSS was known in the field of statistics, without evidence that the statistical principle had particular application to the plaintiff's field or a related field.

In *Attia v. Google LLC*, another case cited by TW, the owner of the alleged trade secret authorized another party to publish information disclosing the trade secret in a patent application. 983 F.3d 420, 425 (9th Cir. 2020). In fact, the owner of the alleged trade secret admitted that publication of the patent application "extinguished" its trade secret rights. *Id.* at 426. In this case, neither the IEEE publication nor any other article potentially disclosing the TSS was published under authorization from Cercacor or Masimo, which continue to assert their trade secret rights.

TW's other cases also do not aid its cause, because the plaintiff in both cases placed the alleged trade secret into the public domain. *See, e.g.*, *In re Sotera Wireless, Inc.*, 794 F. App'x 625, 627 (9th Cir. 2020) (unpublished) (the plaintiff published the alleged trade secret in a white paper on its own website); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000) (alleged trade secret was published in a patent application filed by the plaintiff). Here, no one alleges that Masimo placed the TSS into the public domain.

In addition to its arguments based on the IEEE conference paper, TW points to a declaration from its expert, Thomas Goldstein. Dr. Goldstein, a computer science professor, claimed to be the kind of person who could "obtain economic value from" the disclosure of the TSS. J.A. 3101. TW argues that Dr. Goldstein was such a person because his curriculum vitae lists work for an alleged competitor of Masimo's on "algorithms for medical image reconstruction," and that "attendees of an IEEE signal processing conference" are also such persons. Appellant's Br. 17.

The district court noted that the TSS's economic value derives from how it makes development of SpHb-measuring devices practical. J.A. 14. The district court was not required to credit Dr. Goldstein's declaration as establishing that the TSS would be well known to persons involved in the relevant field of art, because Dr. Goldstein's declaration did not tie the particular statistical information to the field of medical devices for measuring blood characteristics, or even any related field. The court's conclusion in that regard was supported by the evidence that Dr. Lamego had described the TSS as a trade secret "not known in the literature," and had labeled a notebook including the TSS and related material as a trade secret. J.A. 809, 823–28.

Under some circumstances, the publication of an alleged trade secret will clearly be sufficient to indicate that the information is generally known. However, the fact that

the trade secret has been revealed in some publication somewhere does not necessarily compel a finding that the information cannot maintain its status as a trade secret for a party in an entirely different field from the one to which the publication was addressed.

We need not decide the precise boundaries of the class of persons who could obtain economic value from the disclosure of the TSS. In analogous cases, such persons have been described as those falling within the class of "business competitors or others to whom the information would have some economic value." *Syngenta Crop Prot., Inc. v. Helliker*, 138 Cal. App. 4th 1135, 1172 (Ct. App. 2006); *see also DVD Copy Control Assn., Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (Ct. App. 2004) (the "relevant people" are "potential competitors or other persons to whom the information would have some economic value"); Restatement (Third) Unfair Competition § 39 cmt. f (suggesting consideration of whether a disclosure was "reasonably accessible to competitors"); *All Am. Semiconductor, LLC v. APX Tech. Corp.*, No. G046605, 2013 WL 4434345 (Cal. Ct. App. Aug. 14, 2013), *as modified on denial of reh'g* (Sept. 10, 2013) ("Information that is generally known to the public or to persons in the relevant industry is not a trade secret."); *Kittrich Corp. v. Chilewich Sultan, LLC*, No. CV1210079, 2013 WL 12131376, at *4 (C.D. Cal. Feb. 20, 2013) (considering whether the information was "widely publicized in the industry" along with "industry custom").

Ultimately, the class of persons who could obtain economic value from the disclosure of the TSS may well be broader than just those entities who develop noninvasive blood content detectors. For example, disclosure of the TSS in a publication directed to persons working in related fields, such as the healthcare field in general, might be sufficient to render the TSS generally known to persons who could obtain economic value from it based on its utility in signal processing in medical instruments generally. There may be other fields in which the use of TSS could result in

economic value.  However, based on the limited record developed in this preliminary injunction proceeding, the district court was not required to conclude that the fact that the TSS was known to at least some persons within the statistics community meant that it was generally known to persons who could obtain economic value from it.  The district court therefore did not err in finding that Masimo is likely to succeed in showing the TSS to be a trade secret.

At minimum, Masimo has raised a serious question as to the validity of its trade secret, i.e., it has demonstrated a "fair chance of success on the merits or questions serious enough to require litigation." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105–06 (9th Cir. 2012) (citation omitted).  That is sufficient to justify entry of a preliminary injunction in this case, given that the consequence of denying preliminary relief would be to allow disclosure of the trade secret before Masimo's right to prevent disclosure is decided in the trial on the merits.[2]

B

TW next argues that the district court erred in denying its motion for reconsideration of the decision to enter the preliminary injunction.  We review the district court's denial of a motion for reconsideration for abuse of discretion. *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  A motion for reconsideration "is appropriate if the district court (1) is presented

---

[2]    As the Supreme Court explained in *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits," and as a consequence, "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."

with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id.*

After the preliminary injunction was entered, TW obtained deposition testimony from three current or former Masimo employees, "all of whom are or were engineers in the noninvasive monitoring industry." Appellant's Br. 51. Those witnesses testified that electrical engineers working in the industry often review IEEE publications, and that those engineers "actively referred to IEEE publications while developing algorithms for Cercacor." *Id.* TW argued that the testimony was new evidence that the IEEE publication disclosing the TSS was generally known to those who could obtain economic value from the TSS's disclosure.

The district court noted that it was "already familiar with how well known the articles at issue were," and that the motion "therefore [did] not raise any new material facts that justify reconsideration." J.A. 43. In particular, the district court highlighted that a "showing that IEEE publications are generally known to electrical engineers . . . is insufficient to show that information found in particular articles is generally known." J.A. 42. That was especially true given that IEEE publishes approximately "two hundred different transactions, journals, and magazines," and adds about 200,000 papers annually to its digital library. *Id.*

Rather than challenging those observations by the district court, TW continues to focus on the district court's alleged refusal to consider the IEEE publication as evidence that the TSS was generally known. *See* Appellant's Br. 52. That is the same argument that TW made in response to the district court's findings as to the merits of Masimo's trade secret claim, which we hold were not legally erroneous. In light of the district court's findings that the deposition testimony did not raise "any new material facts that justify reconsideration," *see Sch. Dist. No. 1J*, 5 F.3d at

1263, we are not persuaded that the district court abused its discretion in denying True Wearables' motion for reconsideration.

C

TW argues that Masimo is not likely to establish that Dr. Lamego misappropriated the TSS. We need not reach that argument because it was not raised to the district court.[3] *Villanueva v. California*, 986 F.3d 1158, 1164 n.4 (9th Cir. 2021) ("We have a general rule against entertaining arguments on appeal that were not presented or developed before the district court.") (internal quotation marks and citation omitted).

Likewise, TW argues that the district court erred in balancing the equities among the parties. TW's principal argument on this point is that the district court failed to consider the loss of patent term that TW would effectively incur as a result of the preliminary injunction. That

---

[3] In the "Statement of Facts" section of its brief before the district court, TW noted that Dr. Lamego independently created the Oxxiom device. J.A. 3077–79. That assertion falls short of constituting a developed argument that Dr. Lamego did not misappropriate the TSS in particular. *See Valentine v. Wolf*, 793 F. App'x 547, 548 (9th Cir. 2020) (argument is forfeited if the district court is not "on notice" of it). A single reference to a point in the statement of facts or background section of a brief typically does not preserve that argument for appeal. *See In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012); *Ledford v. Peeples*, 657 F.3d 1222, 1258 (11th Cir. 2011); *Wasco Prods. Inc. v. Southwall Tech., Inc.*, 166 F. App'x 910, 911 (9th Cir. 2006). That is all TW's brief before the district court had to say on the issue of misappropriation.

argument was not raised before the district court and is therefore forfeited.[4]

In addressing the balancing of the equities, TW argues that Masimo would not be harmed by publication of the '158 Application. That argument, however, assumes that TW will prevail in showing that Masimo does not have a valid trade secret. If the TSS is a trade secret, then the publication of the '158 Application would destroy that trade secret by making it public. *See Ultimax*, 587 F.3d at 1355 ("Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished . . . .") (citation omitted). That potential harm to Masimo is significant, and the district court did not err in considering it.

## III

In summary, the district court did not err in finding that Masimo was likely to succeed in showing the TSS to be a trade secret. TW's remaining arguments are either forfeited or unpersuasive. For those reasons, we affirm the decision of the district court.

**AFFIRMED**

---

[4]    TW argued before the district court that the potential harm to it, if the preliminary injunction were entered, was a delay in the ability to enforce its patent rights. J.A. 3097–98. A delay in enforcing patent rights is a temporary harm, whereas a loss of patent term is permanent. Because TW did not raise the effect that the loss of patent term could have on the balancing of the equities, we do not address that argument here.